**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| STEPHAN G. BIGHAM, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL NO.  04-887-PMF |

**MEMORANDUM AND OPINION**

**FRAZIER, Magistrate Judge:**

Plaintiff, Stephan G. Bigham, seeks judicial review of a final decision of the Commissioner of Social Security denying his May, 2000, application for disability benefits. Following administrative proceedings, an Administrative Law Judge (ALJ) denied the application on the basis that Bigham was not disabled. That decision became final when the Appeals Council declined further review. Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g).

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. § 404.1520. The

Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id*.

At the time of the ALJ's decision, plaintiff was 54 years old. He had a high school education, vocational training, and work experience as a coal mine shift superintendent. The ALJ evaluated plaintiff's application through Step 5 of the sequential analysis and concluded that plaintiff had severe ailments (chronic ischemic heart disease, diabetes mellitus, obstructive pulmonary process, and hypertension) that did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ also determined that plaintiff retained the ability to perform a restricted range of sedentary work. Although plaintiff could not return to his usual line of work, he was not disabled because he retained the ability to perform a significant number of bank teller and proof reader jobs (R. 21-27).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making

-2-

independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.     Independent Medical Finding

Plaintiff challenges a portion of the ALJ's residual functional capacity assessment, claiming that the ALJ made an independent medical finding when he decided that plaintiff retained the ability to sit without time limits so long as he could occasionally elevate his feet. Specifically, plaintiff targets the ALJ's decision that plaintiff did not need to elevate his feet to a level above his heart. Defendant argues that substantial evidence supports the ALJ's assessment.

In *Diaz v. Chater*, 55 F.3d 300 (7th Cir. 1995), the Court of Appeals recognized that residual functional capacity is an assessment of what a claimant can do despite his limitations. A physician's opinion is not the only evidence relevant to this determination. Rather, ALJs are obligated to consider the entire record in assessing a person's capacity to perform a range of work. *Id*. At 306.

In 1999 and 2000, plaintiff was treated for symptoms of peripheral edema (R. 307-308, 313-14, 401, 405). In July, 2000, Dr. Gotway reviewed the medical records and formed the opinion that plaintiff could sit, with regular breaks, for about 6 hours in an 8-hour workday (R. 136).

In January, 2001, Dr. Leung assessed edema in both legs (R. 351). Dr. Pardo subsequently reviewed the medical records and formed the opinion that plaintiff could sit, with regular breaks, for about 6 hours in an 8-hour workday (R. 128).

In March, 2001, plaintiff's physical condition was evaluated by Dr. Mansuri, who did not

detect edema in plaintiff's extremities (R. 397). The following day, plaintiff made a phone report to a nurse, describing increased swelling in his feet and ankles. A doctor prescribed medication, and a nurse "reinforced" an instruction to reduce his salt intake and elevate his legs when seated (R. 395). When an examination in June, 2001, revealed edema, plaintiff's medications were altered (R. 392-3). In September, 2001, plaintiff testified that he elevated his feet above chest level for several hours each day in order to relieve swelling in his lower legs (R. 38).

The ALJ determined that plaintiff needed to occasionally elevate his feet but did not need to elevate his feet above the level of his heart (R. 25).

ALJs must not make their own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). When a treating physician restricts a patient's activities, ALJs may not substitute a personal opinion for that of the physician. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). That is, ALJs must make disability determinations based on evidence in the record and be careful not to succumb to the temptation to play doctor. *Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990).

The Court is not persuaded that the ALJ's assessment of plaintiff's physical ability to sit represents an independent medical determination. Rather, the ALJ assessed plaintiff's limitations by weighing conflicting evidence regarding plaintiff's symptoms and the impact of those symptoms on plaintiff's ability to sit for extended periods. The ALJ assessed plaintiff's residual functional capacity by giving some weight to plaintiff's testimony and some weight to medical assessments and treatment notes. ALJs have an obligation to weigh evidence, resolve conflicts, and make residual functional capacity assessments. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

Plaintiff also argues that the ALJ improperly rejected an inadequate medical opinion from a treating source without seeking clarification. Defendant responds that plaintiff has not identified

a treating source opinion.

Opinion evidence receives special consideration during the disability determination. In some circumstances, ALJs will recontact a treating source in order to obtain more information about the opinion. 20 C.F.R. § 404.1527(c)(3).

Plaintiff's argument fails because a rational ALJ could consider the May 7, 2001, nursing telephone note as a description of recommended treatment for symptoms of edema rather than as a treating physician's judgment about plaintiff's physical restrictions. 20 C.F.R. §§ 404.1513(a); 404.1527(a)(2).

## II.  Consideration of Crucial Evidence

Plaintiff also argues that the ALJ ignored crucial evidence, namely his testimony that he needed to lie down and nap during the day. Defendant argues that the ALJ rationally declined to incorporate this restriction in his assessment of plaintiff's residual functional capacity.

Plaintiff testified that he normally relieved his symptoms by lying down and elevating his feet for about three hours at the most. He didn't think he could work, in part because his legs would swell if he wasn't able to elevate them for most of the day (R. 38, 44).

ALJs do not need to specifically mention each piece of evidence. Rather, they need only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988).

Here, the ALJ explained that he evaluated plaintiff's subjective complaints and decided that plaintiff's statements regarding his limitations were exaggerated and not totally credible (R. 25, 27). The ALJ's credibility assessment shows that plaintiff's statements regarding his efforts to relieve symptoms were considered.

## III.  Conclusion

The Commissioner's final decision regarding Stephan G. Bigham's application for disability

benefits is AFFIRMED.

**SO ORDERED.**

**DATED:   March 30, 2006   .**

<i>s/Philip M. Frazier</i><br>
<b>PHILIP M. FRAZIER</b><br>
<b>UNITED STATES MAGISTRATE JUDGE</b>